(No. 78421.—

BONNIE FRANSON, on Behalf of Elizabeth Franson, a Minor, Appellant, v. PHILIP MICELLI, Appellee.

*Opinion filed May 23, 1996.*

Jack O'Malley, State's Attorney, of Chicago (Robert F. Lyons, Leonard N. Foster, Sharon Johnson Coleman and Zeophus Williams, Assistant State's Attorneys, of counsel), for appellant.

Paul C. Gridelli, of Martin, Breen & Merrick, of Oak Park, and Marc W. Martin, of Genson, Steinback, Gillespie & Martin, of Chicago, for appellee.

Matthew J. Piers, Jonathan A. Rothstein and Frederick S. Rhine, of Gessler, Hughes & Socol, Ltd., of Chicago, for *amicus curiae* Genetic Design, Inc.

Steven Saltzman, of Chicago, for *amicus curiae* American Association of Blood Banks.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and William D. Leslie and Barbara L. Greenspan, Special Assistant At-

torneys General, of Chicago, of counsel), for *amicus curiae* Illinois Department of Public Aid.

Terrence Hegarty and Dennis A. Rendleman, of Springfield, for *amicus curiae* Illinois State Bar Ass'n.

JUSTICE HARRISON delivered the opinion of the court:

Bonnie Franson filed a complaint in the circuit court of Cook County under the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1989, ch. 40, par. 2501 *et seq.*) to obtain a judicial determination that Philip Micelli was the natural father of her child, Elizabeth, and to compel Micelli to pay child support and provide health insurance for the child. The issue of paternity was decided by a jury, which returned a verdict finding Micelli to be Elizabeth's natural father. The circuit court entered judgment on that verdict and denied Micelli's post-trial motion.

Micelli then brought an appeal pursuant to Rule 301 (155 Ill. 2d R. 301), arguing that the circuit court erred in allowing the jury to consider DNA evidence. The appellate court agreed, holding that the DNA evidence should not have been presented to the jury because the statistical method employed by the testing lab to assess the relative frequency of genetic patterns did not satisfy the *Frye* test (*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)) for determining the admissibility of novel scientific evidence. Based on this conclusion, the appellate court reversed and remanded for a new trial. 269 Ill. App. 3d 20. We then granted Franson's petition for leave to appeal. 155 Ill. 2d R. 315.

The case was argued at this court's November 1995 term and taken under advisement at that time. In preparing a disposition for the case, we discovered that there was nothing in the record to indicate that the trial court had ever ruled on Franson's requests for child support and health insurance for the child. From the

materials before us, it appeared that the circuit court's rulings were limited to the question of paternity and that these other matters were still pending. Indeed, Franson's brief specifically requested that in reversing the appellate court's disposition, we should reinstate the judgment of the trial court and remand "for proceedings on the issue of support."

In *Deckard v. Joiner*, 44 Ill. 2d 412, 416-17 (1970), this court held that an order establishing fatherhood in a statutory paternity action is not final and appealable where the circuit court has reserved for future determination the amount of child support and expenses for which the father is liable. Based on *Deckard* and the record before us, we concluded that there was no final judgment and that Micelli, the father, had no basis for invoking the appellate court's jurisdiction.

Where, as here, the appellate court has considered the merits of a case when it had no jurisdiction to do so, we must vacate that court's judgment and dismiss the appeal. *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205 (1994). This is so even though the jurisdictional defect has not been raised by the parties, for as with any court of review, we have an independent duty to ensure that appellate jurisdiction is proper. *Ferguson v. Riverside Medical Center*, 111 Ill. 2d 436 (1985).

Although we could have disposed of the case summarily in accordance with these principles, the proceedings had reached such an advanced stage that we thought it prudent to defer action until the parties had an opportunity to respond. We afforded them such an opportunity by issuing a rule to show cause why the appellate court's judgment should not be vacated and the appeal dismissed. In response, Micelli sought and was granted leave to supplement the record to include additional orders entered by the circuit.

The additional orders, whose authenticity has not been questioned, show that the circuit court did make a ruling on support before Micelli filed his notice of appeal in this case. According to the supplemental record, the circuit court required Micelli to make child support payments of $200 per month, commencing September 22, 1993. In so doing, however, the court expressly deferred ruling on whether Micelli should also be required to provide medical insurance for the child or make retroactive child support payments.

The duty to provide health insurance is an integral part of a parent's current and future support obligations. Under Illinois law, the matters are intertwined. See Ill. Rev. Stat. 1989, ch. 40, pars. 2514, 505.2. Accordingly, where health insurance coverage is requested, the question of support cannot be regarded as fully resolved until the court has ruled on the health insurance as well.

We note, moreover, that our appellate court has held that even after a circuit court has entered an order for support in a paternity action, there is still no final judgment within the meaning of Rule 301 (155 Ill. 2d R. 301) if the court has reserved for future consideration issues such as retroactive child support or reimbursement to the mother for the expenses of pregnancy and delivery. See *Department of Public Aid ex rel. Chiapelli v. Viviano*, 195 Ill. App. 3d 1033 (5th Dist. 1990); *Department of Public Aid ex rel. Corrigan v. Hawkins*, 187 Ill. App. 3d 139 (2d Dist. 1989); *People ex rel. Driver v. Taylor*, 152 Ill. App. 3d 413 (4th Dist. 1987). The reason is that these issues are not merely ancillary or incidental, as would be the case with enforcement of a support order or an increase in the amount of support based on a subsequent change in circumstances. Rather, they are a matter of substantial controversy between the parties, no less important than the issue of present support

obligations. To be consistent in following *Deckard*, 44 Ill. 2d at 417, there is no way to distinguish them.

The first district of the appellate court has reached a contrary conclusion where the issues reserved pertained to the mother's right to recovery of expenses incurred during pregnancy and whether she should be awarded attorney fees and costs. *People ex rel. Johnson v. Payne*, 127 Ill. App. 3d 398, 404 (1984); *Watkins v. Martin*, 115 Ill. App. 3d 417, 419-20 (1983). Although these two cases purport to apply *Deckard*, their analysis is dubious, at best. We need not consider them on the merits, however, for neither attorney fees nor pregnancy expenses are involved in the dispute before us today. Any ruling on those matters would therefore be *dicta*. At this point we need say no more than that we agree with those appellate court decisions holding that there is no final judgment in a statutory paternity action where, as here, the circuit court has reserved a ruling on retroactive child support.

The additional orders cited by Micelli therefore do not alter our original conclusion that the appellate court had no jurisdiction to hear his appeal under Supreme Court Rule 301 (155 Ill. 2d R. 301). If some alternative basis existed for invoking the appellate court's jurisdiction, Micelli was obliged to demonstrate it. He has not done so.

In *People ex rel. Block v. Darm*, 267 Ill. App. 3d 354 (3d Dist. 1994), the third district of the appellate court did recognize one optional mode of review in statutory paternity actions. It held that a finding of paternity can be appealed even where issues of retroactive child support and reimbursement of expenses remain unresolved, provided that the court makes an express written finding under Rule 304(a) (155 Ill. 2d R. 304(a)) that there is no just reason for delaying enforcement or appeal. *Department of Public Aid ex rel. Corrigan v. Hawkins*,

187 Ill. App. 3d 139 (2d Dist. 1989), indicates that it would have taken this position, too, had the appropriate Rule 304(a) language been included by the trial court there. The fifth district of the appellate court, on the other hand, has recently questioned such an approach in light of this court's conclusion in *In re Marriage of Leopando*, 96 Ill. 2d 114, 120 (1983), that the issues raised in a dissolution-of-marriage case are not separate claims that can be appealed under Rule 304(a). *Elkins v. Huckelberry*, 276 Ill. App. 3d 1073 (5th Dist. 1995). In this case, the issue is academic. As in *Corrigan,* the circuit court did not make the express written finding required to support a Rule 304(a) appeal. Accordingly, even if *Darm* is correct, Micelli would still have no basis for obtaining appellate review.

For the foregoing reasons, we adhere to our conclusion that the appellate court had no jurisdiction to decide this case. The appellate court's judgment is therefore vacated and the appeal is dismissed.

*Appellate court judgment vacated;*
*appeal dismissed.*