In re PARENTAGE OF M.M.W., a Minor (Marci Marie Webber, Petitioner-Appellant, v. Robert Leslie Thompson, Respondent-Appellee).

Second District   No. 2—97—0612

Opinion filed June 1, 1998.—Rehearing denied July 9, 1998.

K.O. Johnson, of DeKalb, for appellant.

William I. Caldwell, Jr., of Caldwell, Berner & Caldwell, of Woodstock, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The petitioner, Marci Marie Webber, appeals from various orders of the circuit court of McHenry County that (1) denied her petition to terminate the parental rights of the respondent, Robert Leslie Thompson, to the parties' minor daughter, M.M.W., and allow the adoption of the child by the petitioner's husband, Linus Liubinskas; (2) transferred temporary custody of the child to the respondent; and (3) transferred permanent custody of the child to the respondent. We affirm in part and reverse in part.

The record shows that on June 9, 1993, the petitioner filed a petition to declare the respondent the father of her child, M.M.W., who was born on August 21, 1992. The parties were never married. The petition also sought to terminate the respondent's parental rights alleging, *inter alia*, that the respondent was an "unfit person" as shown by his failure to make a good-faith effort to pay a reasonable amount

of the expenses related to the birth of the child pursuant to sections 1(D)(n) and 8(a)(1) of the Adoption Act (750 ILCS 50/1(D)(n), 8(a)(1) (West 1996)).

On March 17, 1994, the trial court entered an order granting the respondent temporary visitation. On April 28, 1994, the court established a support obligation on the part of the respondent and enjoined the petitioner from removing the child from the State of Illinois without an order from the court. On January 11, 1995, the trial court entered an order establishing the respondent's paternity. On March 20, 1995, the petitioner filed an amended petition to allow her husband to adopt M.M.W. On April 12, 1995, the trial court dismissed the petitioner's petition to adopt. The cause remained before the court on a petition to increase child support brought by the petitioner, an attorney fees petition requesting sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) brought by the respondent, and various rules to show cause brought by the respondent in relation to the petitioner's lack of compliance with the court's visitation order. On May 30, 1995, the trial court held the petitioner in contempt of court for violations of visitation occurring in October and November 1994.

Sometime after the trial court dismissed the petitioner's petition to adopt, she moved to the State of Ohio. On July 24, 1995, she filed an action in Ohio under the Uniform Child Custody Jurisdiction Act (750 ILCS 35/1 et seq. (West 1996)), alleging that M.M.W. had indicated that the respondent had sexually abused her. On July 25, 1995, the Ohio court entered an order suspending the respondent's visitation. As part of the Ohio action, the petitioner falsely filed an affidavit indicating that she had been a resident of the State of Ohio for the six months preceding the filing of the action. On that same day, the respondent filed a petition in the circuit court of McHenry County to transfer custody, alleging that custody should be modified because the petitioner had interfered with his visitation rights and removed herself and the minor child from the jurisdiction without proper leave of court.

On July 26, 1995, the trial court found that the petitioner had willfully and contemptuously taken the child to the State of Ohio. Without conducting an evidentiary hearing, the court transferred temporary custody of the child to the respondent. On July 27, 1995, the Ohio court vacated its prior order and recognized that the McHenry County court had jurisdiction over the matter.

On September 3, 1996, the McHenry County trial court entered an order transferring permanent custody to the respondent. The court continued the case for a hearing on the issues of visitation and

support. In reaching its decision to permanently transfer custody to the respondent, the court found that section 602 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/602 (West 1996)) was the appropriate standard to apply in considering the petition to transfer custody rather than the standard enunciated in section 610 of the Marriage Act (750 ILCS 5/610 (West 1996)), which applies to petitions to modify custody orders within two years of a prior custody order. The court found that the petitioner was unwilling to facilitate a continuing relationship between the minor and the father as shown by the numerous rules to show cause filed in the case for violations of prior visitation orders and her temporary move to the State of Ohio.

On November 25, 1996, the trial court entered an order setting a visitation schedule. On April 15, 1996, the court set the petitioner's support obligation and continued the case to May 12, 1997, for a ruling on the respondent's motion for sanctions.

The petitioner had filed three petitions for rules to show cause against the respondent for his violation of the court's visitation order. On May 12, 1997, the court found the respondent in contempt of court on the first petition for rule to show cause and then dismissed the other two petitions. The court further discharged the contempt order that had been entered against the petitioner and dismissed the petitions for rule to show cause that had been filed against her. On that same day, the trial court also entered an order granting the respondent's petition for sanctions pursuant to Supreme Court Rule 137, and it ordered the petitioner to pay $8,371 in attorney fees. The order provided that it was a final order in the case but did not contain Supreme Court Rule 304(a)'s language "that there is no just reason for delaying either enforcement or appeal" (155 Ill. 2d R. 304(a)).

As a preliminary matter, we must address the respondent's contention that this court lacks jurisdiction to entertain the petitioner's appeal because the order from which she appeals, that of May 12, 1997, was not final.

■■ An appellate court's jurisdiction is confined to reviewing appeals from final orders or judgments (155 Ill. 2d Rs. 301, 303, 304), unless the particular order or judgment falls into an enumerated category permitting interlocutory appeals. See 155 Ill. 2d Rs. 307, 308. A final order disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof. See *Village of Niles v. Szczesny*, 13 Ill. 2d 45, 48 (1958). In a paternity action, once parentage is established and custody, visitation, and support are determined, ancillary or incidental issues reserved for future consideration such as the enforcement of a support order or an

increase in the amount of support do not render a final judgment nonfinal. See *Franson v. Micelli*, 172 Ill. 2d 352, 356 (1996).

■ Here, when the trial court entered its May 12, 1997, order, the rights of the parties with respect to the matters raised in the petitioner's petition to establish parentage and adopt and the respondent's petition to transfer custody had been disposed of by previous orders of the court. The trial court established parentage, transferred custody to the respondent, set a support obligation and a visitation schedule, and then finally ruled on the respondent's motion for Rule 137 sanctions. The court's May 12, 1997, order ruling on the respondent's motion for sanctions was the final order in the case. See *Gaynor v. Walsh*, 219 Ill. App. 3d 996, 999-1002 (1991). Although the petitioner had motions pending to modify and clarify visitation and to obtain a restraining order against the respondent's spouse, these matters were ancillary and incidental to the orders transferring custody and establishing a support obligation and a visitation schedule. See *Franson*, 172 Ill. 2d at 356. Because we find the May 12, 1996, order to be final, we conclude that this court has jurisdiction to hear the petitioner's appeal. We turn now to the merits of that appeal.

The petitioner first argues on appeal that the trial court erred in dismissing her and her husband's petition for adoption. She contends that the respondent failed to pay a reasonable amount of the expenses related to the birth of the child and therefore his parental rights should have been terminated pursuant to sections 1(D)(n) and 8(a)(1) of the Adoption Act (750 ILCS 50/1(D)(n), 8(a)(1) (West 1996)).

■ Section 8(a)(1) of the Adoption Act provides that consents or surrenders to adoption are not required in cases where the person whose consent or surrender would otherwise be required is found by the court "to be an unfit person as defined in Section 1 of this Act, by clear and convincing evidence." 750 ILCS 50/8(a)(1) (West 1996). Section 1(D)(n) of the Adoption Act lists one of the grounds that would support a finding of unfitness as follows:

> "Evidence of intent to forego his *** parental rights *** as manifested by the father's failure, where he and the mother of the child were unmarried to each other at the time of the child's birth, *** to make a good faith effort to pay a reasonable amount of the expenses related to the birth of the child and to provide a reasonable amount for the financial support of the child, the court to consider in its determination all relevant circumstances, including the financial condition of both parents ***." 750 ILCS 50/1(D)(n) (West 1996).

■ In the present case, the petitioner testified that the medical

costs associated with the birth of the child were covered by insurance. The only other expenses remotely associated with the birth were the over-the-counter vitamins that the petitioner purchased each month. She maintained that the respondent did not reimburse her for the premiums for her health insurance. However, the record indicated that one month after the birth of the child the respondent began paying the petitioner $75 per week. The petitioner also stated that she stayed at the respondent's home during a portion of the three weeks following the birth of the child and before she returned to school. Under the circumstances, we find that it could not be properly concluded that the respondent failed to make a good-faith effort to pay a reasonable amount of the expenses related to the birth of the child. Accordingly, we find no error in the trial court's decision to dismiss the petitioner's petition to adopt.

The petitioner next argues that the trial court's decision to transfer temporary custody was made on the improper basis that she removed the minor from Illinois to Ohio. She notes that, since she was not married to the father, the removal provision of section 609 of the Marriage Act (750 ILCS 5/609 (West 1996)) was inapplicable and prior approval for removal was not required. She also argues that the trial court erred in transferring temporary custody without the required evidentiary hearing. She further contends that, with respect to the decision to transfer permanent custody, the trial court erroneously applied section 602 of the Marriage Act (750 ILCS 5/602 (West 1996)) instead of section 610 (750 ILCS 5/610 (West 1996)), which is the appropriate section to consider in deciding upon motions to modify custody filed within two years of a previous custody order.

■ Initially, we note that the Illinois Parentage Act of 1984 (the Parentage Act) (750 ILCS 45/1 *et seq.* (West 1996)) does not contain any provision requiring that actions for removal be resolved pursuant to section 609 of the Marriage Act, and section 609 of the Marriage Act is not implicitly incorporated into the Parentage Act. *In re Parentage of R.M.F.*, 275 Ill. App. 3d 43, 50 (1995). Thus, a custodial parent in a case where the parents were never married is not required to file an action for removal prior to removing the minor from the state. *In re Parentage of R.M.F.*, 275 Ill. App. 3d at 49-51.

■ Since the petitioner in the present case could properly take the minor outside the state without filing a petition for removal, we conclude that the trial court erroneously concluded that the petitioner "contemptuously" took the child to Ohio. At any rate, we note that courts of this state have consistently held that a change of custody is an improper remedy to punish a custodial parent's contumacious interference with visitation rights. *In re Marriage of Fox*, 191 Ill.

App. 3d 514, 522 (1989). Remedies for visitation abuse other than a change of custody are provided in section 607.1 of the Marriage Act. 750 ILCS 5/607.1 (West 1996). While the petitioner may have violated visitation orders while outside the state, section 607.1 of the Marriage Act sets forth the procedures for the enforcement of visitation orders and the remedies for visitation abuse (750 ILCS 5/607.1 (West 1996)). That section lists among the relief that may be granted by the court "[o]ther appropriate relief deemed equitable." 750 ILCS 5/607.1(c)(5) (West 1996). However, this does not mean that the court can modify custody under this provision absent a petition to modify pursuant to section 602 or 610 of the Marriage Act. To hold otherwise would nullify the procedures for modification listed in sections 602 and 610. Moreover, the court in the present case simply transferred custody without conducting an evidentiary hearing. Section 607.1(c) requires that the court grant relief to the aggrieved party only after "hearing all the evidence." 750 ILCS 5/607.1(c) (West 1996).

■ The court in *In re Parentage of R.M.F.* noted that the Parentage Act does contain a provision whereby a noncustodial parent can bring a petition to modify custody or visitation. *In re Parentage of R.M.F.*, 275 Ill. App. 3d at 50. All actions to modify custody or visitation brought pursuant to the Parentage Act are governed by the standards contained in the Marriage Act. 750 ILCS 45/16 (West 1996); *In re Parentage of R.M.F.*, 275 Ill. App. 3d at 50. In actions to modify visitation, a court is to apply the same provisions of the Marriage Act as are applicable to custody determinations. *In re Parentage of R.M.F.*, 275 Ill. App. 3d at 50.

■ Section 610(b) of the Marriage Act provides:

"The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian *** and that the modification is necessary to serve the best interests of the child." 750 ILCS 5/610(b) (West 1996).

Section 610(a) of the Marriage Act (750 ILCS 5/610(a) (West 1996)) requires that, in order to modify custody in cases arising less than two years after an order setting custody, the trial court must find that the child's environment places him in serious danger. *In re Marriage of Noble*, 192 Ill. App. 3d 501, 508 (1989).

■ Section 14(a)(2) of the Parentage Act states:

"If a judgment of parentage contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent *shall be considered a judgment granting*

*custody to the other parent.* If the parentage judgment contains no such provisions, custody shall be presumed to be with the mother \*\*\*." (Emphasis added.) 750 ILCS 45/14(a)(2) (West 1996).

In the present case, a support obligation and visitation rights were established in the respondent as of April 28, 1994, along with a prior judgment of parentage on January 11, 1994. Thus, when the respondent filed his petition to transfer custody on July 25, 1995, it should have been treated as motion to modify custody within two years of a prior custody award under section 610 of the Marriage Act. Instead, the trial court simply transferred custody without an evidentiary hearing and later determined the matter as if it were an initial custody determination pursuant to section 602 of the Marriage Act. That section requires the court to determine custody in accordance with the best interests of the child considering all relevant factors, including eight factors specifically enumerated in that section. 750 ILCS 5/602 (West 1996). Unlike section 610(a), it does not require the trial court to find that the child's environment places him in serious danger, and, unlike section 610(b) (750 ILCS 5/610(b) (West 1996)), it does not require that the court "shall not modify a prior custody judgment unless it finds by clear and convincing evidence \*\*\* that a change has occurred in the circumstances of the child." See 750 ILCS 5/602, 610 (West 1996). Here, the trial court erred in applying the wrong statutory section in deciding the respondent's petition to transfer custody. The trial court also failed to take into consideration that, at the time it heard evidence and made its permanent ruling deciding that issue, the condition alleged as the main basis for transferring custody no longer existed since the petitioner had long since returned to Illinois and apparently had no plans to return to Ohio.

In conclusion, we find that the trial court applied the wrong statutory section in determining the petition to transfer custody and then proceeded to make its determination based upon improper reasons. While we are mindful of the fact the petitioner exhibited some difficulty in honoring the respondent's visitation rights, we are not convinced based on the record before us that a change of custody was warranted. We find no evidence in the record that would support the conclusion that clear and convincing evidence existed indicating that a change in circumstances of the child or the petitioner had occurred and that modification was necessary to serve the best interests of the child.

Accordingly, we affirm the judgment of the circuit court of McHenry County that dismissed the petitioner's petition to adopt and to terminate parental rights. However, we reverse the judgments of

the circuit court of McHenry County that transferred temporary and permanent custody of M.M.W. to the respondent. Although we find no evidence of bias or prejudice on the part of the trial judge, we remand the cause for further proceedings before a different judge. The further proceedings conducted on remand are to be in a manner consistent with the views expressed in this opinion. Our resolution of the foregoing issues renders moot the remaining issues raised by the parties on appeal.

Affirmed in part and reversed in part; cause remanded.

DOYLE and COLWELL, JJ., concur.